UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HUME LAKE CHRISTIAN CAMPS, INC.,<br><br>Defendant. | Case No.: 17-CV-1600 JLS (KSC)<br><br>**ORDER GRANTING MOTION TO TRANSFER VENUE**<br><br>(ECF No. 8) |

Presently before the Court is Defendant Hume Lake Christian Camp, Inc.'s Motion to Dismiss Complaint for Improper Venue or, Alternatively to Transfer to the Eastern District of California, ("MTN," ECF No. 8). Also before the Court are Plaintiff Travelers Property Casualty Company of America's Opposition, ("Opp'n," ECF No. 11), to Defendant's Motion and Plaintiff's Reply in Support of the Motion, ("Reply," ECF No. 13). The Court took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having considered the law and the Parties' arguments, the Court **GRANTS** Defendant's Motion to Transfer Venue.

/ / /

/ / /

/ / /

## BACKGROUND

Defendant Hume Lake is a non-profit organization that owns and operates a year-round camp in Hume, California. (MTN 6.)[1] This dispute arises from an insurance policy covering that camp. Defendant purchased an "all risk" property and casualty policy from Plaintiff Travelers effective from September 1, 2015 to September 1, 2016. (*Id.* at 6–7.) On July 31, 2015, a forest fire began near the Hume Lake area and caused significant structural and smoke-related damage to Hume Lake camp facilities. (*Id.* at 6.) Following unsuccessful pre-litigation mediation, Plaintiff filed the present action in the Southern District of California. (*Id.*) The parties dispute the "business income" provision in Travelers' policy. However, as relevant here, Defendant seeks to dismiss Plaintiff's Complaint or, alternatively, transfer to the Eastern District of California under Federal Rule of Procedure 12(b)(3) for improper venue. (*Id.* at 7.)

The parties agree that the Hume Lake camp is located in the Eastern District of California. (MTN 12; Opp'n 5.) Defendant also states that all of Hume Lake's day-to-day operations occur in the Hume Lake/Fresno area and virtually all high-level employees reside in the same area. (MTN 12.) Defendant states that its principal place of business is in Fresno, California—the location of its corporate offices. (*Id.*) Plaintiff does not dispute that the principal place of business is in Fresno. (Opp'n 5.) Hume Lake has approximately 115 full-time employees and 50 part-time employees located at the Hume Lake camp and in Fresno. (MTN 12.) During the summer, Defendant hires an additional 325 seasonal employees at the Hume Lake camp and hosts 2,500 campers per week. (*Id.*) However, one employee, Mr. Terrence Mowers, Defendant's General Counsel, telecommutes from his home in San Diego. (*Id.*; Opp'n 5.) Also relevant, Defendant hosts a temporary six-week camp during the summer in the San Diego area. Defendant rents a facility from Point Loma Nazarene University for the temporary camp, but does not have any permanent facilities in the San Diego area. (MTN 12.) Defendant

---

[1] Pin citations refer to the EM/CMF page numbers electronically stamped on docket materials.

employs two full-time[2] and 23 temporary employees and hosts approximately 400 campers at the six-week camp. (*Id.*; Opp'n 5.) Finally, Plaintiff states that Defendant's General Counsel was one of the primary representatives with whom Plaintiff Travelers communicated regarding the insurance claim and the business income dispute at the core of this dispute. (Opp'n 6.)

## LEGAL STANDARD

Federal venue determinations are governed exclusively by federal law. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988). Proper venue is generally based on the most convenient or fair forum as established by the various statutory criteria (such as defendants' residences or where the cause of action took place.) *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986); *see also Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167 (1939). A motion to dismiss pursuant to Rule 12(b)(3) is the appropriate method to challenge improper venue. Fed. R. Civ. P. 12(b)(3).

Under the general venue statute:

> A civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants reside in the same State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which the action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Once a defendant challenges venue, the plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). In determining whether venue is proper, the Court may consider facts outside

---

[2] The two full-time employees travel from the Hume Lake Camp to the San Diego area to help run the six-week camp. (MTN 12.)

3

the pleadings probative of the issue of venue. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). If a court determines venue is improper, it may dismiss the case, or if it is in the interest of justice, the court may transfer the case to any other district in which it could have been brought. 28 U.S.C. § 1406(a); *Dist. No. 1, Pac. Coast Dist. v. Alaska*, 682 F.2d 797, 799 n.3 (9th Cir. 1982). Ultimately, the decision whether to dismiss or transfer rests in the court's sound discretion. *See King v. Russell*, 963 F.2d 1301, 1304–05 (9th Cir. 1992). The Court considers each of the three bases for venue.

## ANALYSIS

### I. Whether Venue is Proper Under Section 1391(b)(1)

Under 28 U.S.C. § 1391(b)(1) venue is proper in any district where Defendant Hume Lake resides. Section 1391(c) defines residency for purposes of venue. Section 1391(c)(2) applies to Defendant, a juridical entity, and provides that a corporation "shall be deemed to reside in any district, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). For states with more than one judicial district, including California, "in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." *Id.* § 1391(d). Therefore, the Court must determine whether it has personal jurisdiction over Defendant and must consider the Southern District of California as a separate state for forum analysis.

Where there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which it sits. *See* Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). California's long-arm jurisdictional statute permits the exercise of personal jurisdiction so long as it comports with federal due process. *See* Cal. Civ. Proc. Code § 410.10; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least

4

17-CV-1600 JLS (KSC)

'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)). Under the minimum contacts test, jurisdiction can be either "general" or "specific." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001) *abrogated on other grounds*, *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). If a defendant has sufficient minimum contacts for the court to exercise personal jurisdiction over him, the exercise of such jurisdiction must also be reasonable. *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987).

Where, as here, the motion to dismiss is based on written briefings—rather than an evidentiary hearing—the plaintiff need only make a prima facie showing of jurisdiction, *Schwarzenegger*, 374 F.3d at 800. A plaintiff makes a prima facie showing by producing admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In deciding whether the prima facie showing has been made, a court must accept as true the uncontroverted allegations in the complaint and factual conflicts are resolved in the plaintiff's favor. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

Plaintiff argues the Court has personal jurisdiction to hear the case under both general and specific jurisdiction. The Court considers each basis for personal jurisdiction in turn.

*A. General Jurisdiction*

General personal jurisdiction allows a plaintiff to hale a nonresident defendant into the forum state's court "to answer for any of its activities anywhere in the world." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting *Schwarzenegger*, 374 F.3d at 801), *cert. denied*, 135 S. Ct. 2310 (2015). A court has general personal jurisdiction over a foreign corporation to hear any and all claims against it when its affiliations with a State are "so 'continuous and systematic' as to render [it]

essentially at home in the forum State." *Daimler AG*, 134 S. Ct. at 754 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); and *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414, n.9 (1984)). In order to be found essentially at home in the forum state, a company must be comparable to a domestic enterprise in that state. *Daimler*, 134 S. Ct. at 749.

A corporation will primarily be "at home" for the purposes of general jurisdiction in two paradigmatic forums: its place of incorporation[3] and its principal place of business. *Id.* (citing *Goodyear*, 564 U.S. at 924). General jurisdiction is not limited to these two forums, but will only be available elsewhere in the "exceptional case" where its affiliations with a forum are "so substantial and of such nature as to render the corporation at home." *Id.* at 761 n.19; *see also Martinez*, 764 F.3d at 1070. Those affiliations or contacts must be "constant and pervasive." *Daimler*, 134 S. Ct. at 751. To determine whether an exceptional case exists that justifies general jurisdiction, the Court must conduct "an appraisal of a corporation's activities in their entirety, nationwide, and worldwide." *Id.* at 762 n.20. "A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.*

Defendant argues that Plaintiff does not allege any facts establishing general

---

[3] The parties do not address the fact that Defendant is incorporated in California. One of the bases for general jurisdiction is place of incorporation. Could Defendant's incorporation in California provide a basis for general jurisdiction within the venue statute analysis? A district court in the Second Circuit summarized the impact of the 1988 amendment on this question:
> As set forth in the 1988 amendment, venue does not lie against a corporation in a multi-district state solely because of its corporate status. The revised provision does not distinguish between domestic and foreign corporations. "[S]ince a corporation that duly licenses itself under state law is authorized to do business anywhere in the state, the 'licensing' standard would, in a state with several districts, X, Y, Z, make any district in that state a proper venue in an action against a corporate defendant even if all of the corporation's activities were in X district alone. It was this alternative that Congress, citing a Judicial Conference recommendation, sought to eliminate with the 1988 amendment."

*Tranor v. Brown*, 913 F. Supp. 388, 390 (E.D. Penn. 1996) (quoting David D. Siegel, *Commentary on 1988 and 1990 Revisions of Section 1391*, at 7 (1989)). The Court finds no reason to depart from this summary and declines to find general jurisdiction in the Southern District solely due to Defendant's incorporation in the state of California.

jurisdiction. Instead, Plaintiff's Complaint only alleges that Defendant is incorporated in California and its principal place of business is the same. (MTN 11 (citing Compl. ¶ 2, ECF No. 1).) Defendant concedes that it is incorporated in California, but argues that its principal place of business, where its corporate offices are located, is Fresno, California. (MTN 11.) Plaintiff tacitly concedes that Defendant's two paradigmatic locations—place of incorporation and principal place of business—are outside the Southern District. (*See* Opp'n 8 (arguing general jurisdiction based on "contacts and activities").) Rather, Plaintiff argues that Defendant is "subject to general jurisdiction because it has purposely availed itself of the privilege of doing business in San Diego and has engaged in continuous corporate operations so substantial that it may be regarded as being at home in the Southern District." (Opp'n 10.)

In support of its contention that Defendant's activity in the Southern District rises to the level of "exceptional" and "constant and pervasive," Plaintiff points to the six-week annual camp in San Diego attended by at least 23 employees and 400 campers. (Opp'n 10.) Defendant rents property, located in the Southern District, used for the six-week camp; it also regularly advertises for the San Diego camp over social media. (*Id.*) Plaintiff also points to contracts that Defendant enters into with local businesses to offer off-campus activities to its campers. (*Id.*) Finally, Plaintiff emphasizes that Defendant's General Counsel lives in San Diego, maintains an office in San Diego, and is Defendant's agent for service of process. (*Id.* at 10–11.) In sum, Plaintiff argues these contacts, taken together, establish general jurisdiction. (*Id.* at 9–11.)

These contacts are not sufficient to render Defendant essentially at home in the Southern District, as required by *Daimler*. In *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1065 (9th Cir. 2015), the Ninth Circuit examined the relevant contacts for Nike's Netherlands affiliate, NEON, for the purposes of general jurisdiction in Oregon. The plaintiff argued that NEON's contacts were "sufficiently pervasive to subject it to general jurisdiction" in Oregon. *Id.* at 1069. In support of this contention, the plaintiff demonstrated that 20 to 27 NEON employees worked in Oregon at any one time between 2006 and 2008, NEON

employees averaged 47 trips per month to Oregon to conduct business meetings between 2006 and 2011, and NEON entered into various business contracts with Oregon stores. *Id.* The *Ranza* court held there was no general jurisdiction despite "NEON send[ing] employees and products into Oregon and engag[ing] in commercial transactions there." *Id.* (citing *Daimler*, 134 S. Ct. at 761); *see Daimler*, 134 S. Ct. at 760–61 (rejecting the proposition that general jurisdiction is appropriate wherever a corporation "engages in a substantial, continuous, and systematic course of business").

Both *Daimler* and *Ranza* both teach that general jurisdiction requires an appraisal of a corporation's activities in their entirety. *See Daimler* 134 S. Ct. at 762 n.20; *Ranza*, 793 F.3d at 1070. In *Ranza*, the court noted that while the defendant sent employees and products into Oregon and engaged in commercial transactions in Oregon, the defendant's extensive contacts in Europe, where the vast majority of its employees and business activities are located did not render it "essentially at home" in Oregon. 793 F.3d at 1070.

Here, Defendant's activities in the Southern District is neither "substantial, continuous, and systematic," *Daimler*, 134 S. Ct. at 760–61, and it is not essentially at home in this District. Instead, the facts here are similar to *Ranza*. In *Ranza*, the presence of employees working in the state, employees temporarily visiting the state, and contracts with local businesses in the state did not support general jurisdiction. Here, Plaintiff argues that similar types of activities also give rise to general jurisdiction. Yet, the facts supporting general jurisdiction—one full-time employee telecommuting from the Southern District, two full-time and 23 part-time employees who visit once a year for six weeks, and several business contracts to support the camp—all point to the same type and depth of the contacts in *Ranza*.

Similar cases support finding no general jurisdiction. Defendant employs approximately 115 full-time and 50 part-time employees at the Hume Lake Camp or Fresno corporate office, both in the Eastern District. (Declaration of Terrence A. Mowers ("Mowers Decl."), ¶ 4, ECF No. 8-1.) The presence of one full-time employee, Mr.

Mowers, who lives in the District[4] and two full-time and 23 temporary employees for the six-week camp in San Diego do not support general jurisdiction. *See Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 963 (N.D. Cal. 2015) (finding no general jurisdiction where 304 Ford employees worked in California out of 75,000 employees in the United States and 187,000 worldwide). Nor do the volume or value of contracts Defendant executed with San Diego businesses to offer activities for the San Diego campers support general jurisdiction. *See Martinez*, 764 F.3d at 1070 (affirming finding of no general jurisdiction where defendant entered into five contracts with California corporations, one of which was worth between $225 and $450 million). These cases support the teaching of *Daimler* and *Ranza* to appraise a corporation's activities in their entirety. The vast majority of Defendant's activities occur in the Eastern District, where its primary camp is located as well as its corporate offices and staff.

*Daimler* requires a Defendant's presence to be "substantial, continuous, and systematic" in order to find general jurisdiction. 134 S. Ct. at 760–61. A six-week camp with temporary employees is not continuous. The presence of Defendant's general counsel is continuous, but not substantial when compared with the presence of 115 full-time employees in the Eastern District. Taken together, each contact does not rise to the "exceptional" standard required by *Daimler* and to find general jurisdiction here would ignore the teachings of *Daimler* and its predecessors. In sum, Defendant engages in business in the Southern District, but is not essentially at home in this District. The Court finds that it does not have personal jurisdiction based on general jurisdiction.

---

[4] Plaintiff's argument that personal jurisdiction exists because Defendant's General Counsel is designated its agent for service of process is unavailing. Generally, "federal courts must, subject to federal constitutional restraints, look to state statutes and case law in order to determine whether a foreign corporation is subject to personal jurisdiction in a given case because the corporation has appointed an agent for service of process." *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 576 (9th Cir. 2011). However, Plaintiff fails to identify any specific California statute that might supply personal jurisdiction. *See, e.g.*, *L.A. Gem & Jewelry Design, Inc. v. Ecommerce Innovations, LLC*, No. CV 16-9325-RSWL-KSX, 2017 WL 1535084 (C.D. Cal. Apr. 27, 2017) ("Designation of an agent for service of process in California, alone, is not enough to show general jurisdiction.").

### B. *Specific Jurisdiction*

For a court to exercise specific jurisdiction over a non-resident defendant, the plaintiff must establish:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)). If Plaintiff satisfies the first two prongs then Defendant must present a "'compelling case' that exercise of jurisdiction would not be reasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 477 (1985)). In order for Plaintiff to satisfy the first prong it must demonstrate that Defendant either purposefully availed itself of the privilege of conducting activities in the forum, or purposefully directed its activities at the forum. *Id.* "[P]urposeful availment analysis is most often used in suits sounding in contract." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802).

Under the purposeful availment analysis, a contract alone does not automatically establish minimum contacts in the plaintiff's home forum. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008)). Instead, there must be "actions by the defendant *himself* that create a substantial connection with the forum State." *Id.* (internal quotation marks omitted) (quoting *Burger King*, 471 U.S. at 475)). "Merely 'random, fortuitous, or attenuated' contacts are not sufficient." *Id.* (quoting *Burger King*, 471 U.S. at 475)). The defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Id.* (quoting *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th

Cir. 1990)). In determining whether such contacts exist, a court considers "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479.

Plaintiff argues that Defendant performed substantial acts relating to the insurance policy contract in the Southern District. (Opp'n 13.) Specifically, Defendant's General Counsel, Mr. Mowers, was one of Defendant's representatives who communicated with Plaintiff's representatives during the claim investigation and Mr. Mowers resides in the Southern District. (*Id.*) Plaintiff concedes that the damage to the property insured by its contract occurred in the Eastern District, but contends that the processing of the claim, communications regarding the claim, and negotiations regarding the insurance policy provision at issue all occurred in the Southern District. (*Id.* at 14.) Finally, Plaintiff states that Defendant retained outside counsel who are located in the Southern California and pre-litigation mediation occurred in Los Angeles. (*Id.* at 15.) Thus, Plaintiff contends that specific jurisdiction is proper because Defendant was handling the dispute from the Southern District. (*Id.*)

Defendant counters that it did not purposefully avail itself in the Southern District for the purposes of the insurance policy. (MTN 15.) The subject of the insurance policy—insuring against property loss or damage—lies in the Eastern District, i.e., the Hume Lake camp. The policy was approved, obtained, and performed by Defendant from its offices in Hume Lake or Fresno. (Reply 10 (citing Mowers Decl. ¶ 6).)

The Court first considers the prior negotiations and contemplated future consequences. Plaintiff alleges no evidence that prior negotiations leading up to the contract took place in the Southern District. In fact, Defendant claims that the policy was approved and obtained by Defendant in its Fresno offices. The contemplated future consequences likewise do not support finding purposeful availment. In an insurance action, the contemplated performance is payment and transfer of funds from Plaintiff to Defendant. *See Ins. Co. of N. Am. v. Matson Terminals, Inc.*, No. CV 13-8959 SJL (FFMx), 2014 WL 10987407, at *3 (C.D. Cal. Apr. 10, 2014). Plaintiff alleges no facts

11

supporting the inference that the transfer of funds will be connected in any way to the Southern District. This factor does not support Plaintiff's claim.

Neither party provided the Court with the contract at issue; therefore, in analyzing this factor the Court must rely on the parties' secondhand descriptions of the contract rather than the contract itself. The contract insured property outside of the Southern District. (*See* MTN 6.) The disputed business income provision concerns the extent to which Plaintiff must indemnify Defendant's lost income or operating expenses. (*See id.* at 7.) This dispute does not appear to contemplate any involvement of the Southern District, nor has Plaintiff alleged any other facts in the contract (or about the contract) that points to the Southern District. This factor does not support purposeful availment.

The Court turns to course of dealing. Plaintiff alleges, and Defendant does not contest, that some amount of correspondence regarding the insurance claim and subsequent dispute over the business loss provision did occur in the Southern District. Plaintiff's claim adjuster for this dispute declared that Mr. Mowers was the primary contact for the insurance claim and the disputed business loss provision. (Declaration of Tony A. Calub ¶ 2, ECF No. 11-1.) Therefore, the Court must determine whether Mr. Mowers' actions create a substantial connection with the forum state. *See Burger King*, 471 U.S. at 475.

The Ninth Circuit has stated that, ordinarily, "use of the mails, telephone, or other international communication simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." *Applied Underwriters, Inc. v. Combined Mgmt.*, 371 Fed. App'x 834, 835 (9th Cir. 2010) (unpublished decision) (alteration in original) (quoting *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991)).

Both parties agree that Defendant's General Counsel communicated, either by phone or email, with Plaintiff's representatives concerning the disputed insurance policy.

The Court does not rely solely on *Applied Underwriters*, 371 Fed. App'x at 835.[5] Instead, the Court finds that Mr. Mowers' communications facilitated business in the Eastern District and not in the Southern District. *Burger King* instructs the Court to examine "actions by the defendant *himself* that create a substantial connection with the forum State." 471 U.S. at 475. This factor does not support a substantial connection with the forum because Mr. Mowers' communications may have originated from the Southern District but those communications concerned connections with the Eastern District.[6]

The relevant considerations point towards locations other than the Southern District: the pre-contract negotiations, subject matter of the claim, place of performance, and some of the pre-litigation interactions all took place outside the Southern District. This is not affirmative conduct by Defendant that allows or promotes the transaction of business in the forum. *See Burger King*, 471 U.S. at 474. Instead, it is fortuitous that Defendant's general counsel resides in the Southern District. For example, Mr. Mowers could telecommute from the Northern or Central District of California and still engage in the same communications and negotiations concerning the insurance contract and resulting litigation. Therefore, the Court finds that Defendant's contractual relations do not constitute purposeful availment of the benefits and protections of the Southern District.

The Court arrives at the same conclusion under the second element of the specific

---

[5] Several courts have questioned the holding in *Peterson v. Kennedy*, 771 F.2d 1244 (9th Cir. 1985), which is the case that *Applied Underwriters* ultimately relies on for its "use of mails, telephones, or other international communication" holding. *Peterson* was decided after the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), but does not address *Calder*'s effects test. *See Gusevs v. AS Citadele Banka*, No. 16-cv-3793-SVW-FFM, 2017 WL 2661707, at *7 n.5 (C.D. Cal. Feb. 13, 2017). However, *Peterson* is still good law in the Ninth Circuit, *see, e.g.*, *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991), and this case does not involve applying the *Calder* effects test, which is used in analyzing specific jurisdiction for tort claims.

[6] Plaintiff also argues that the Court should place some weight on the fact that Defendant hired a Southern California law firm to litigate this action and that pre-litigation mediation occurred in Southern California. The Court declines to do so because the firm is located in Santa Monica, California, i.e., the Central District. *See* 28 U.S.C. § 84(c) (defining Central District of California). The pre-litigation mediation took place in Los Angeles, also in the Central District.

jurisdiction test, which requires that a claim must be one which arises out of or relates to the defendant's forum-related activities. A court determines whether a claim arises out of defendant's forum-related activities in terms of "but for" causation. *Unocal Corp.*, 248 F.3d at 924 (citing *Ballard*, 65 F.3d at 1500). Thus, the relevant question here is: but for Defendant Hume Lake's contacts with the Southern District of California, would Plaintiff Travelers' claims have arisen? Plaintiff has not met its burden of showing causation and the Court answers the question in the negative. The dispute over the business income provision in the insurance policy does not arise from Defendant's contacts or activities in the forum. The presence of Defendant's General Counsel in the Southern District does not impact the outcome of this claim. He could easily live and telecommute from any location in California. In such a hypothetical, Defendant's insurance claim for property damage and the resulting dispute would remain unchanged in substance. That does not satisfy but for causation.

Thus, the Court finds that the claim does not arise out of Defendant's activities in the Southern District. Because Plaintiff has not carried its burden on the first two elements of specific jurisdiction, the Court need not consider whether it is reasonable to exercise jurisdiction over Defendant. The Court does not have specific jurisdiction over Defendant. Therefore, the Court also finds that Defendant does not reside in the Southern District for the purposes of section 1391(b)(1) because the Court does not have personal jurisdiction over Defendant, *see* § 1391(c)(2).

**II.     Whether Venue is Proper Under Section 1391(b)(2)**

Plaintiff also argues that venue is proper under section 1391(b)(2).[7] (*See* Opp'n 14.) Section 1391(b)(2) provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

Plaintiff does not need to show that the Southern District has the *most* substantial

---

[7] Defendant takes no position on § 1391(b)(2). (*See generally* MTN; Reply.)

relationship of all possible venues. *See Richmond Techs., Inc v. Aumtech Bus. Solutions*, No. CV 11-2460 LHK, 2011 WL 2607158, at *10 (N.D. Cal. July 1, 2011) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005)). Instead, "for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins.*, 417 F.3d at 357; *see also id.* (warning that it "would be error, for instance, to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries"). In a contract action, a court will look "to such factors as where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Id.* (internal citations and quotation marks omitted).

The Court first finds that a substantial part of the events occurred in locations other than this District. The contract was negotiated and executed at Defendant's Hume Lake or Fresno, California offices, which are in the Eastern District.[8] The contract is an insurance policy; performance under the contract requires Plaintiff to transfer funds to Defendant. *See Ins. Co. of N. Am.*, 2014 WL 10987407, at *3. While neither party discloses where Plaintiff's payment would originate, there is no evidence that funds would either be transferred from or be received in the Southern District. There is no allegation that either party maintains its principal place of business in the Southern District. Thus, the place of performance does not support venue in the Southern District. Nor does the place of performance for the business contract relating to the temporary six-week camp in San Diego provide any significant event—any transaction related to the six-week camp is not related to an insurance policy dispute concerning property damage and lost business. The place of the alleged breach is not clear—Plaintiff's claim arises

---

[8] The Court notes that Mr. Mowers does not provide the exact location where the contract was negotiated or signed. (*See* Mowers Decl. ¶ 6 ("The underlying Travelers policy was approved, obtained, and performed by Hume Lake from its offices in Hume Lake or Fresno.").) Plaintiff does not, however, provide any allegation that would allow the Court to find the contract was negotiated or signed in the Southern District.

15

17-CV-1600 JLS (KSC)

from Defendant's contention that it is entitled to additional income under the business income provision. Plaintiff alleges that Mr. Mowers handled a substantial portion of underlying insurance claim, (Opp'n 6), but this does answer where the alleged breach occurred. Instead, the Court considers the impact of Mr. Mowers' actions below.

The Court next considers the events that did occur in this district. Specifically, whether communications conducted by a representative of an entity may constitute a substantial part of events material to the dispute even if all other events occur elsewhere. Here, Mr. Mowers was the only connection between this dispute and this district.

In *Charter Oak Fire Ins. Co. v. Rimini Street, Inc.*, No. C15-2378 CRB, 2015 WL 4914476, at *2 (N.D. Cal. Aug. 17, 2015), a district court in the Northern District of California tested whether venue was proper where the plaintiff's only venue argument was that the defendant tendered a defense to a Nevada lawsuit from its California office. There, like here, the claim arose from an insurance transaction where the plaintiff was required to provide general liability coverage to the defendants. *Id.* at *2. A third party filed a counterclaim against the defendant in Nevada federal court. The defendants tendered a defense to the counterclaim from California and plaintiff initially agreed to defend, but later reneged and brought suit in the Northern District against the defendants. *Id.* The court held that "[i]n an insurance coverage action, to establish venue via section [what is now renumbered as 28 U.S.C. § 1391(b)(2)], a court looks to the underlying events for which coverage is sought." *Id.* (alterations in original) (quoting *Columbia Cas. Co. v. SMI Liquidating*, No. C 10-02057 CRB, 2010 WL 3037242, at *3 (N.D. Cal. July 30, 2010)). In *Charter Oak*, the underlying event for which the defendants sought coverage was the Nevada lawsuit. Therefore, a substantial part of events giving rise to the instant action did not occur in the Northern District. *Id.*

The district court opinion underlying both *Charter Oak* and *Columbia Casualty* is also instructive. In *Carolina Casualty Co. v. Data Broadcasting Corp.*, 158 F. Supp. 2d 1044, 1047 (N.D. Cal. 2001), the issue again was whether venue was proper in the Northern District in an insurance coverage action. There, the agreement at the core of the

dispute was entered into in Los Angeles, the plaintiff's obligations were performed in Los Angeles, and one meeting between the parties occurred in Los Angeles. *See id.* However, the defendant's offices were in the Northern District, the website that was the subject matter of the underlying lawsuit was operated out of the defendant's offices, and a meeting took place in the Northern district. *Id.* On these facts, the court found venue proper in the Northern District, but the court also noted that "coverage negotiations between the law firms should not be considered." *Id.*

The Court finds this case hews closer to the facts in *Charter Oak* than *Carolina Casualty*. *Carolina Casualty* stated the rule that "a court looks to the underlying events for which coverage is sought."[9] *Id.* (collecting cases). Unlike *Carolina Casualty*, Defendant's offices are located outside this district and Plaintiff alleges no meetings that occurred in the Southern District in arriving at insurance coverage. The processing of the insurance claim, communications regarding the claim, and negotiations regarding the business income coverage, (*see* Opp'n 14), are all events that arose *after* the underlying events for which coverage is sought. Both *Charter Oak* and *Carolina Casualty* implicitly recognized this distinction. In *Carolina Casualty*, the court agreed that "coverage negotiations between the law firms should not be considered." 158 F. Supp. 2d at 1047. In *Charter Oak*, the defendants tendered their defense to a third-party lawsuit from their office in the district and the court found this fact insufficient to establish venue. 2015 WL 4914476, at *2. Here, Plaintiff alleges that Mr. Mowers engaged in some discussions, communications, and negotiations about the insurance claim from the Southern District. These are discussions that arose *after* the underlying events for which

---

[9] In *Charter Oak Fire Ins. Co v. Interstate Mechanical, Inc.*, No. 10-cv-1505-PK, 2012 WL 1357674, at *13 (D. Ore. Mar. 29, 2012), the court stated there was disagreement among federal courts on how to apply § 1392(b)(2). In addition to the rule in *Carolina Casualty* the court also noted that other district courts base their venue analysis on the events relating to the insurance contract itself, *id.* (citing *Gulf Ins. Co.*, 417 F.3d at 357), or "where arguably covered events occurred or where the insurance contract was formed," *id.* (citing *Malveaux v. Christian Bros. Servs.*, 753 F. Supp. 2d 35, 39 (D.D.C. 2010)). Neither alternative test is helpful to Plaintiff. First, the Court has considered the analysis of *Gulf Insurance* in arriving at its decision. *See supra* section II. Second, neither the covered events nor the insurance contract formation occurred in the Southern District.

Defendant seeks coverage. In light of all the facts and circumstances surrounding this insurance contract and resulting dispute, these actions by Defendant and its representative are not sufficient for purposes of section 1391(b)(2).

### III. Whether Venue is Proper Under Section 1391(b)(3)

Finally, to satisfy 28 U.S.C. § 1391(b)(3), Plaintiff must show that the instant action could not have been brought in any other district. Defendant concedes that its principal place of business is in the Eastern District. (MTN 6.) Therefore, Defendant is a resident, for purposes of section 1391(b)(1), in the Eastern District. This case could have been brought in the Eastern District and; therefore, the Court finds that venue is improper in this district under section 1391(b)(3).

### IV. Whether the Court Should Transfer the Case to the Eastern District

Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district in which it could have been brought." 28 U.S.C. § 1406(a). Whether a district court is the wrong district is determined by the general venue statute, section 1391. *Atlantic Marine Const. Co., Inc v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 577 (2013). When venue is challenged, under Federal Rule of Civil Procedure 12(b)(3), the district court must determine whether a case falls within one of the three categories in 1391(b). *Id.* If one of the three categories exists then venue is proper, but if venue is improper then the "case must be dismissed or transferred under § 1406(a). *Id.*

"[N]ormally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." *Amity Rubberized Pen Co. v. Market Quest Grp. Inc.*, 793 F.3d 991, 996 (9th Cir. 2015) (citations omitted). Transfer of venue is appropriate, for example, to prevent penalizing a party for an honest procedural mistake. *See id.* "[T]ransfer will generally be in the interest of justice unless it is apparent that the matter to be transferred is frivolous or was filed in bad faith. This is a low bar and . . . it will usually involve a very limited inquiry

by the transferring court." *Id.*

Here, it is not apparent that Plaintiff filed in bad faith; its argument, while not ultimately meritorious, was a good faith attempt to argue that personal jurisdiction exists in the Southern District. Dismissing the case will only delay ultimate resolution of the dispute. The Court finds that it is appropriate to transfer the case. Defendant concedes that its principal place of business is in the Eastern District of California; therefore, a court in the Eastern District would have personal jurisdiction (and thus venue) over Defendant. (MTN 6.) Plaintiff does not propose an alternate district to transfer the case and, given the foregoing discussion, the Court sees no other obvious district where venue is proper other than the Eastern District.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's Motion to Transfer, (ECF No. 8), and **ORDERS** the case transferred to the Eastern District of California, Fresno Courthouse.

**IT IS SO ORDERED.**

Dated: January 3, 2018

Hon. Janis L. Sammartino
United States District Judge